BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PAUL (BART) GREEN (Cal. Bar No. 300847)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-0805
Email: Paul.Green@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

KA LI CHEUNG,

Plaintiff,

v.

KRISTI NOEM, *et al.*,

Defendants.

No. 5:25-cv-00938-SSS-SHK

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

(Memorandum of points and authorities, declarations of Brett H. Lassen and David Radel, proposed judgment, and statement of uncontroverted facts and conclusions of law filed concurrently)

Hearing Date: February 13, 2026
Hearing Time: 2 p.m.
Ctrm: 2, Riverside

Honorable Sunshine S. Sykes
United States District Judge

# TABLE OF CONTENTS

DESCRIPTION PAGE

TABLE OF AUTHORITIES ....... ii
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ....... v
MEMORANDUM OF POINTS AND AUTHORITIES ....... 1
I. INTRODUCTION ....... 1
II. ADMINISTRATIVE BACKGROUND ....... 1
A. The Asylum Process ....... 1
B. The Asylum Backlog ....... 3
C. LIFO Scheduling System ....... 5
III. STATEMENT OF FACTS ....... 6
IV. LEGAL STANDARD ....... 7
V. ARGUMENT ....... 8
A. Plaintiff Fails To State An APA Claim For Unreasonable Delay. ....... 8
1. The First *TRAC* factor (Rule of Reason) favors Defendant. ....... 9
2. The Second *TRAC* factor (Congressional Timetable) favors Defendant. ....... 10
3. The Third (Human Health and Welfare) and Fifth (Prejudice) *TRAC* factors favor Defendant. ....... 12
4. The Fourth *TRAC* factor (Effect of Expediting Relief) favors Defendant. ....... 13
5. The Sixth *TRAC* factor (Impropriety) favors Defendant. ....... 14
B. Plaintiff Fails To State A Mandamus Claim For The Same Reasons. ....... 15
C. Plaintiff Fails To State A Due Process Claim. ....... 15
VI. CONCLUSION ....... 17
Certificate of Compliance under L.R. 11-6.2 ....... 17

# TABLE OF AUTHORITIES

DESCRIPTION PAGE

**Cases**

*A Cmty. Voice v. EPA*, 878 F.3d 779 (9th Cir. 2017) .......... 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 8

*Arostegui v. Holder*, 368 F. App'x 169 (2d Cir. 2010) .......... 16

*Assad v. U.S. Citizenship & Immigr. Servs.*, 2024 WL 4580385 (C.D. Cal. Oct. 3, 2024) .......... 9, 14-15

*Azeez v. U.S. Dep't of Homeland Sec.*, 2024 WL 1109289 (C.D. Cal. Feb. 15, 2024) .......... 7

*Baizakova v. Jaddou*, 2024 WL 3063227 (C.D. Cal. Jun. 14, 2024) .......... *passim*

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 8

*Dawod v. Garland*, 2023 WL 8605320 (C.D. Cal. Aug. 10, 2023) .......... 8

*Denisov v. Mayorkas*, 2024 WL 3522047 (N.D. Cal. July 23, 2024) .......... 10

*Fang Yan v. Dir. of Los Angeles Asylum Off.*, 2023 WL 4053410 (C.D. Cal. Jun. 16, 2023) .......... 9, 10

*Gebhardt v. Nielsen*, 879 F.3d 980 (9th Cir. 2018) .......... 15

*Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151 (9th Cir. 2010) .......... 8

*Heckler v. Chaney*, 470 U.S. 821 (1985) .......... 13

*Immigr. & Naturalization Servs. v. Miranda*, 459 U.S. 14 (1982) .......... 15

*Indep. Min. Co., Inc. v. Babbitt* 105 F.3d 502 (9th Cir. 1997) .......... 15

*In re Barr Lab'ys, Inc.*, 930 F.2d 72 (D.C. Cir. 1991) .......... 13

*Kazantceva v. Jaddou*, 2025 WL 1537647, at *3 (C.D. Cal. May 28, 2025) .......... 9

*Kouropova v. Gonzales*,
200 F. App'x 692 (9th Cir. 2006) .......... 16

*Liberty Fund, Inc. v. Chao*,
394 F. Supp. 2d 105 (D.D.C. 2005) .......... 9-10

*Lincoln v. Vigil*,
508 U.S. 182 (1993) .......... 13

*Litovchenko v. USCIS*,
2025 WL 1914905 (C.D. Cal. May 22, 2025) .......... 9, 10

*Liu v. Jaddou*,
2025 WL 1911771 (C.D. Cal. Apr. 21, 2025) .......... 12, 13

*Martirosyan v. Jaddou*,
2025 WL 2074363 (C.D. Cal. Apr. 16, 2025) .......... 8

*Massachusetts v. EPA*,
549 U.S. 497 (2007) .......... 13

*Mexichem Specialty Resins, Inc. v. EPA*,
787 F.3d 544 (D.C. Cir. 2015) .......... 11

*Mudric v. AG of the United States*,
469 F.3d 94 (3d Cir. 2006) .......... 16

*Liang v. Radel*,
2024 WL 5466658 (C.D. Cal. Dec. 19, 2024) .......... 7

*Shahijani v. Laitinen*,
2023 WL 6889774 (C.D. Cal. Oct. 6, 2023) .......... 15

*Shao v. Mayorkas*,
2024 WL 3361662 (C.D. Cal. Mar. 13, 2024) .......... 7

*Taylor v. List*,
880 F.2d 1040 (9th Cir. 1989) .......... 8

*Telecommunications Research & Action Center v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) .......... 1

*Teymouri v. U.S. Citizenship & Immigr. Servs.*,
2022 WL 18717560 (C.D. Cal. Jan. 31, 2022) .......... 7

*Tigranyan v. Garland*,
2025 WL 1421853 (C.D. Cal. May 8, 2025) .......... 8

*Vang v. Gonzales*,
237 F. App'x 24 (6th Cir. 2007) .......... 16

*Varzaghani v. Mayorkas*,
2024 WL 2952141 (C.D. Cal. June 5, 2024) .......... 7

*Vaz v. Neal*,
33 F.4th 1131 (9th Cir. 2022) .......... 9

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
435 U.S. 519 (1978) .......... 11

*Wang v. Jaddou*,
2024 WL 5707761 (C.D. Cal. Oct. 16, 2024) ............................................ 9, 10, 12

*Yilmaz v. Jaddou*,
697 F. Supp. 3d 951 (C.D. Cal. 2023) ................................................. 13, 14, 16

*Zhang v. Cissna*,
2019 WL 3241187 (C.D. Cal. Apr. 25, 2019) ................................................ 14

*Zhang v. Wolf*,
2020 WL 5878255 (E.D.N.Y. Sept. 30, 2020) ................................................ 10

*Zhu v. Cissna*,
2019 WL 3064458 (C.D. Cal. Apr. 22, 2019)................................................. 12

**Statutes**

5 U.S.C. § 551 ........................................................................................ 8

5 U.S.C. § 555 ........................................................................................ 8

5 U.S.C. § 702 ........................................................................................ 8

5 U.S.C. § 706 ..................................................................................... 1, 8

8 U.S.C. § 1101 ...................................................................................... 1

8 U.S.C. § 1158 ............................................................................... *passim*

8 U.S.C. § 1182 ................................................................................... 2, 7

8 U.S.C. § 1225 ...................................................................................... 2

8 U.S.C. § 1229a .................................................................................... 2

28 U.S.C. § 1361 ................................................................................ 1, 15

**Other**

8 C.F.R. § 1.3 ......................................................................................... 2

8 C.F.R. § 208.2 ...................................................................................... 2

8 C.F.R. § 208.7 .................................................................................. 2, 6

8 C.F.R. § 208.31 .................................................................................... 2

8 C.F.R. § 212.5 .................................................................................. 2, 7

8 C.F.R. § 274a.12 .............................................................................. 2, 12

8 C.F.R. § 274a.12 .................................................................................. 6

Fed. R. Civ. P. 12 .................................................................................... 7

Federal Rule of Civil Procedure 56 ........................................................ 7, 8

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

PLEASE TAKE NOTICE that, on February 13, 2026 at 2 p.m., or as soon thereafter as they may be heard, the federal government defendants Kristi Noem, Secretary, U.S. Department of Homeland Security, and Joseph B. Edlow, Director, U.S. Citizenship and Immigration Services ("USCIS")[1] (collectively "Defendant") will, and hereby does, move this Court for an order dismissing this action. This motion will be made before the Honorable Sunshine S. Sykes, United States District Judge, Courtroom 2, located at 3470 Twelfth Street, Riverside, CA 92501.

Defendant brings this motion pursuant to Federal Rule of Civil Procedure 56 on the grounds that there is no triable issue of fact as to Plaintiff's claims that the adjudication of Plaintiff's asylum application has been unreasonably delayed.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, the attached Declarations of Brett H. Lassen and David Radel, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which was held on October 23, 2025.

Dated: November 17, 2025

Respectfully submitted,

BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

*/s/ Paul (Bart) Green*
PAUL (BART) GREEN
Assistant United States Attorney

Attorneys for Federal Defendants

[1] Pursuant to Federal Rule of Civil Procedure 25(d), as the current USCIS Director, Joseph B. Edlow is automatically substituted in as a defendant.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff seeks an order compelling the federal government (collectively the "Defendant") to schedule an asylum interview and adjudicate Plaintiff's Form I-589, Application for Asylum and For Withholding Removal, submitted in February 2021. Compl. ¶ 2. Plaintiff alleges that Defendant has unreasonably delayed action on the application. *Id.* ¶ 3. Plaintiff seeks relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, *et seq.*, the Mandamus Act, 28 U.S.C. § 1361, and the Fifth Amendment. *Id*. ¶¶ 26-40.

This action should be dismissed because the delay in adjudicating the application is reasonable under the factors listed in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"). To reward Plaintiff with the relief they seek would disadvantage other applicants who have been waiting as long, if not longer, and further exacerbate the flood of similar litigation negatively impacting the United States Citizenship and Immigration Service's ("USCIS") procedures that ensure orderly adjudication of asylum applications and to reduce the growth of its backlog. Accordingly, Defendant respectfully requests that the Court grant summary judgment and dismiss this action.

## II. ADMINISTRATIVE BACKGROUND

### A. The Asylum Process

The INA permits any noncitizen "who is physically present in the United States or who arrives in the United States" to apply for asylum, absent certain circumstances. 8 U.S.C. § 1158(a)(1). An asylum applicant must apply within one year after arrival in the United States. *Id.* § 1158(a)(2)(B). The applicant must demonstrate that he/she is a "refugee" under the INA and warrant a favorable exercise of discretion. *Id.* §§ 1101(a)(42)(A), 1158(b)(1)(A), 1158(b)(1)(B)(i). Absent exceptional circumstances, the INA directs the government to conduct the initial interview or hearing on an asylum

application within 45 days after filing and to complete the adjudication of an asylum application within 180 days after filing. *Id.* §§ 1158(d)(5)(A)(ii), (iii).

The regulations vest authority to process affirmative asylum applications in USCIS, specifically the Asylum Division. 8 C.F.R. § 208.2(a)(1).[2] The Asylum Division has other mandatory workloads. These include making various screening determinations at both the U.S./Mexico and U.S./Canada land border ports of entry. 2023 Report at 2-3. Border screenings are high priority because applicants screened for reasonable and credible fear are subject to mandatory detention while awaiting an interview.[3] *Id.* at 3-4; *see* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). The Asylum Division has original jurisdiction over asylum applications filed by unaccompanied children.[4] 8 U.S.C. § 1158(b)(3)(C).

While an asylum application is pending, a noncitizen may legally remain in the United States, obtain employment authorization (8 U.S.C. § 1158(d)(2); 8 C.F.R. § 274a.12(c)(8))[5], and seek permission to travel into and out of the United States (8 C.F.R. § 212.5(f)). Asylum applicants are deemed "lawfully present" in the United States for purposes of applying for certain benefits while their applications are pending. 8 U.S.C. § 1182(a)(9)(B)(iii)(II); 8 C.F.R. § 1.3(a)(5). Immediate family members of asylees (i.e., spouses and unmarried children under twenty-one) are eligible for derivative asylum

---

[2] November 1, 2023, *Fiscal Year 2023 Report to Congress on Asylum Application Processing*, available at https://www.dhs.gov/sites/default/files/2024-01/2023_1101_uscis_asylum_application_processing_fy2023.pdf ("2023 Report").

[3] USCIS must complete reasonable fear interviews within ten days of referral, absent exceptional circumstances. 8 C.F.R. § 208.31(b).

[4] The INA requires unaccompanied children to be placed into removal proceedings before an immigration judge, which in turn renders those cases a high priority. *See* 8 U.S.C. § 1229a.

[5] Employment authorization is renewable in five-year increments (increased from the previous two-year increments) for the entire duration that the I-589 remains pending. 8 C.F.R. § 208.7(b). *See also* https://www.uscis.gov/newsroom/alerts/uscis-increases-employment-authorization-document-validity-period-for-certain-categories.

status and may join the principal asylee, whether they are inside or outside the United States. 8 U.S.C. § 1158(b)(3)(A).

### B. The Asylum Backlog

In 2013, the United States experienced a dramatic "surge of foreign nationals attempting to enter the United States at and between ports of entry who, once apprehended, express fear of returning to their home countries, thereby warranting a fear screening." USCIS Ombudsman, *Annual Report 2020*, at 43 (June 30, 2020), https://perma.cc/4QGYYSD6. A corresponding surge in UC also required reallocating the limited number of asylum officers away from adjudicating affirmative asylum applications. *Id.* at 44-45. The Asylum Division had to divert officers away from the adjudication of affirmative applications to address these surges. *Id.* at 45 ("[B]etween FY 2016 to FY 2019, the Asylum Division has needed to temporarily assign on average 475 asylum officers each year in response to other program needs within USCIS[.]").

In January 2018, USCIS faced a "crisis-level" backlog of 311,000 pending asylum applications. USCIS, Press Release, *USCIS to Take Action to Address Asylum Backlog* (Jan. 31, 2018), https://www.uscis.gov/archive/uscis-to-take-action-to-address-asylum-backlog ("LIFO Press Release"). To stem the growth of the asylum application backlog and identify non-meritorious asylum claims sooner, USCIS announced a return to a scheduling system called "Last-In-First-Out" ("LIFO") whereby recently filed affirmative asylum cases were scheduled for interviews ahead of older cases.[6] *Id.*; Declaration of Brett H. Lassen, attached as Ex. 1, ¶¶ 24, 30. In FY 2017, the number of asylum applications filed per year decreased from 141,695 to 59,416 in FY 2021 with the reimposition of LIFO. 2023 Report at 6. Significantly, the annual growth of the

[6] LIFO was originally instituted during the 1995 regulatory reforms to address the growing number of non-meritorious asylum applications filed to obtain employment authorization. Letter from USCIS to Rep. Gerald Connolly, at 2 (July 29, 2021), https://www.uscis.gov/sites/default/files/document/foia/Asylum_Cases_Pending-Rep._Connolly_7.29.21_0.pdf. In 1995, the backlog was over 400,000 cases and was reduced to just over 4,200 in 2013 with the institution of LIFO. *Id.*

backlog dropped dramatically to only 10% in FY 2018, 7% in FY 2019, 13% in FY 2020, and 7% in FY 2021. *Id.* However, since reinstituting LIFO, other developments have diverted officers away from processing the backlog of affirmative applications.

In FY 2021, Congress passed the Extending Government Funding and Delivering Emergency Assistance Act, which requires the Asylum Division to prioritize asylum applications filed by certain Afghan parolees under Operation Allies Welcome ("OAW"). Pub. L. No. 117-43, § 2502(c), 135 Stat. 377 (Sept. 30, 2021). In FYs 2022 and 2023, USCIS received at least 19,500 asylum applications subject to OAW. June 28, 2024, Letter from USCIS to Representative Mark Pocan, at 1. https://www.uscis.gov/sites/default/files/document/foia/AffirmativeAsylum-RepresentativePocan.pdf ("Pocan Letter"). Congress also provided $275 million for application processing, including the reduction of the asylum backlog. Pub. L. No. 117-43, § 132; DHS, Office of Inspector Gen., *USCIS Faces Challenges Meeting Statutory Timelines and Reducing Its Backlog of Affirmative Asylum Claims*, at 4 (July 3, 2024), https://perma.cc/PJA4-SJ3S ("OIG Report"). However, Congress failed to appropriate additional funding for asylum processing or to ameliorate backlogs despite a budget request of $765 million. *See* Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, 136 Stat. 4459 (Dec. 29, 2022); DHS, *USCIS Response to the Citizenship and Immigration Services Ombudsman's 2023 Annual Report to Congress*, at 19 (Aug. 14, 2024), https://www.dhs.gov/sites/default/files/2024-08/24_0814_cisomb_annual-report-uscis-response.pdf ("USCIS 2023 Response"); *see also* Ex. 1, ¶¶ 45.

In FY 2022, the Asylum Division received approximately 240,000 new affirmative asylum applications—a 305% increase from 2021—largely attributed to a surge in applications filed by nationals of two countries experiencing well-documented periods of turmoil: Cuba and Venezuela. 2023 Report at 6-7. In November 2022, USCIS announced that affirmative asylum applications could be filed online to improve efficiency and modernize the process. USCIS, Press Release, *USCIS Announces Online Filing for Affirmative Asylum Applications* (Nov. 9, 2022),

https://www.uscis.gov/newsroom/news-releases/uscis-announces-online-filing-for-affirmative-asylum-applications. In FY 2023, USCIS received more than 454,300 affirmative asylum applications. Pocan Letter at 1. Despite USCIS's efforts to reduce the affirmative asylum backlog, it grew to over one million applications through FY 2023. OIG Report at 7, Figure 4.

As of October 6, 2025, the Los Angeles Asylum Office had over 119,000 pending applications that were in the affirmative asylum case backlog and were awaiting initial eligibility interviews and final case determinations. Declaration of David Radel, attached as Ex. 2, ¶ 7.

**C. LIFO Scheduling System**

USCIS's prior experience shows that LIFO "remains a critical tool in controlling non-meritorious applications filed primarily to obtain employment authorization." 2023 Report at 6. USCIS instituted the following priorities for scheduling affirmative asylum interviews according to LIFO:

1. First, applications scheduled for an interview, but the interview had to be rescheduled at the applicant's request or the needs of USCIS;
2. Second, applications pending twenty-one days or less since filing; and
3. Third, all other pending applications, starting with newer filings and working back toward older filings.

Ex. 2, ¶ 13; *see also* USCIS, *Affirmative Asylum Interview Scheduling*, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling (last updated Mar. 29, 2024) ("Interview Scheduling"). USCIS now schedules affirmative asylum interviews along two tracks simultaneously. *Id.* On the first track, USCIS generally schedules asylum interviews according to the priorities set forth above. On the second track, USCIS assigns some of its asylum officers to complete affirmative asylum cases pending in the backlog, permitting some of the oldest pending cases to be completed in chronological order. *Id.*

The LA Office Director has the discretion to schedule a case for an expedited interview because of a humanitarian issue but only in exceptional circumstances and on a case-by-case basis. *Id.*; USCIS, *Expedite Requests*, https://www.uscis.gov/forms/filing-guidance/expedite-requests (last updated Oct. 30, 2025) ("Expedite Requests").

Between FYs 2022 and 2023, USCIS completed approximately 23,500 of the oldest pending asylum applications. Pocan Letter at 3. "USCIS is examining ways to continue to dedicate a similar number of staff to reducing the oldest pending asylum applications, while also addressing increasing credible fear and reasonable fear screenings, without congressional funding." 2023 Report at 9. However, as of May 2023, USCIS has received over 6,800 lawsuits seeking to compel the agency to act immediately on individual asylum applications. Transactional Records Access Clearinghouse, *Immigration Processing Delays Prompt Record Number of Mandamus Lawsuits in Federal Court* (May 15, 2023), https://trac.syr.edu/reports/717/; *see also* OIG Report at 9-10. USCIS has expended its already limited resources to address this influx of lawsuits, which has caused further disruptions to the Asylum Division and its ability to schedule asylum interviews and work through the backlog of affirmative asylum cases.

## III. STATEMENT OF FACTS

Plaintiff Ka Li Cheung is a noncitizen who applied for asylum on February 1, 2021. Compl. ¶ 2; Ex. 2, ¶ 20. Plaintiff's application falls in the third category of affirmative asylum applications. *Id.* ¶ 21.

USCIS has granted Plaintiff an Employment Authorization Document ("EAD") as defined by 8 C.F.R. §§ 274a.12 and 274a.13. Ex. 2, ¶ 24. Plaintiff is work-authorized until April 16, 2029. *Id*. Plaintiff is eligible to renew her employment authorization in 5-year increments for the entire pendency of her asylum application. *See id.*; 8 C.F.R. § 208.7(b).

Plaintiff is also eligible to travel. An applicant who needs to travel outside of the United States while his/her application is pending may apply for an Advance Parole

Document when the parole is justified by urgent humanitarian reasons or significant public benefit. Ex. 2, ¶ 23; 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 212.5(f).[7] Plaintiff has not applied for advance parole. Ex. 2, ¶ 23.

On April 16, 2025, Plaintiff initiated this action seeking to compel USCIS to schedule and adjudicate her Form I-589, Application for Asylum and For Withholding of Removal. *See* Compl.

## IV. LEGAL STANDARD

Defendant is mindful of this Court's decision in *Liang v. Radel*, in which the Court denied a motion to dismiss based on the *TRAC* factors in an asylum delay case. *See* No. 5:24-CV-01319-SSS, 2024 WL 5466658, at *4 (C.D. Cal. Dec. 19, 2024). As such, Defendant did not move to dismiss and is seeking relief under Fed. R. Civ. P. 56. Nevertheless, Defendant maintains that Fed. R. Civ. P. 12(b)(6) is a proper ground to resolve asylum delay cases, especially in light of the number of these cases on this Court's docket and the costs and burdens of resolving these cases via summary judgment rather than a motion to dismiss. Indeed, the majority of judges in this District have found that a *TRAC* analysis may be conducted at the motion to dismiss stage as the motion is challenging the sufficiency of the pleadings. *See, e.g.*, *Baizakova v. Jaddou*, No. 8:24-201-JFW, 2024 WL 3063227, at *4-7 (C.D. Cal. Jun. 14, 2024) (analyzing *TRAC* factors at the motion-to-dismiss stage in an asylum delay action); *Varzaghani v. Mayorkas*, No. 2:23-cv-1876-DMG, 2024 WL 2952141, at *4-5 (C.D. Cal. June 5, 2024); *Shao v. Mayorkas*, No. 2:23-cv-9639-SVW, 2024 WL 3361662, at *4-6 (C.D. Cal. Mar. 13, 2024); *Azeez v. U.S. Dep't of Homeland Sec.*, No. 2:23-cv-7507-KK, 2024 WL 1109289, at *5-6 (C.D. Cal. Feb. 15, 2024); *Teymouri v. U.S. Citizenship & Immigr. Servs.*, No. 2:22-cv-7689-PA, 2022 WL 18717560, at *3-5 (C.D. Cal. Jan. 31, 2022); *Yakhontova v. Barr*, No. 2:19-4290-FMO, 2020 WL 4355299, at *3-4 (C.D. Cal. Apr. 14, 2020);

[7] *See also Travel Documents*, USCIS, https://www.uscis.gov/green-card/green-card-processes-and-procedures/travel-documents.

*Dawod v. Garland*, No. 2:23-cv-3211-MWF, 2023 WL 8605320, at *7 (C.D. Cal. Aug. 10, 2023); *but see Tigranyan v. Garland*, No. 2:24-cv-741-SPG, 2025 WL 1421853, at *6 (C.D. Cal. May 8, 2025) (granting summary judgment in favor of the government after partially denying *TRAC* factors motion to dismiss); *Martirosyan v. Jaddou*, No. 8:23-cv-02207-MRA, 2025 WL 2074363, at *7 (C.D. Cal. Apr. 16, 2025) (same).

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat a motion for summary judgment, the responding party must present admissible evidence sufficient to establish the existence of any elements that are essential to that party's case and for which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The evidence presented by both sides is to be viewed in the light most favorable to the nonmoving party. *Hawn v. Executive Jet Mgmt., Inc*., 615 F.3d 1151, 1155 (9th Cir. 2010).

## V. ARGUMENT

### A. Plaintiff Fails To State An APA Claim For Unreasonable Delay.

The Administrative Procedure Act ("APA") authorizes suit by any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "Agency action" is defined as, among other things, "failure to act." 5 U.S.C. § 551(13). The APA requires agencies to conclude matters "within a reasonable time," 5 U.S.C. § 555(b), and authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). To determine whether the agency's alleged delay is unreasonable, courts look to the six *TRAC* factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of

> the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may apply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed.

750 F.2d at 80 (citations omitted); *Vaz v. Neal*, 33 F.4th 1131, 1137 (9th Cir. 2022) (applying *TRAC* factors). Here, all of *TRAC* factors favor Defendant.

1. <u>The First *TRAC* factor (Rule of Reason) favors Defendant.</u>

"[T]he first factor requires courts to consider both the length of the delay and the reasons for the delay." *Baizakova*, 2024 WL 3063227, at *5 (quoting *Shahijani v. Laitinen*, No. 2:23-cv-3967-RGK, 2023 WL 6889774, at *4 (C.D. Cal. Oct. 6, 2023)). "A rule of reason is an identifiable rationale for the agency's actions." *Assad v. U.S. Citizenship & Immigr. Servs.*, 2: 24-CV-04200-AB, 2024 WL 4580385, at *4 (C.D. Cal. Oct. 3, 2024). The first factor is "most important . . . though it, like the others, is not itself determinative." *A Cmty. Voice v. EPA*, 878 F.3d 779, 786 (9th Cir. 2017).

Plaintiff's wait of 4 years and 9 months (as of Nov. 17, 2025) is reasonable. Courts in this district have found similar or greater delays in the processing of asylum applications reasonable. *See, e.g.*, *Teymouri*, 2022 WL 18717560, at *4 (five years); *Kazantceva v. Jaddou*, 8:24-cv-827-FLA, 2025 WL 1537647, at *3 (C.D. Cal. May 28, 2025) (four-and-a-half years); *Litovchenko v. USCIS*, No. 2:24-cv-8779-AB, 2025 WL 1914905, at *3 (C.D. Cal. May 22, 2025) (four-and-a-half years); *Fang Yan v. Dir. of Los Angeles Asylum Off.*, No. 2:22-cv-5846-ODW, 2023 WL 4053410, at *4 (C.D. Cal. Jun. 16, 2023) (four years); *Wang v. Jaddou*, 8:24-cv-1098-WLH, 2024 WL 5707761, at *4 (C.D. Cal. Oct. 16, 2024) (four-plus years); *see also Liberty Fund, Inc. v. Chao*, 394

F. Supp. 2d 105, 115 (D.D.C. 2005) ("[M]easuring the delay by years alone cannot establish unreasonable delay.").

USCIS recognizes there has been a delay in scheduling interviews and adjudicating asylum applications due to the dramatic, increased volume of applications. *See* Section II.B *supra*. Plaintiff, however, fails to acknowledge USCIS's implementation of a second track for scheduling affirmative asylum interviews permitting some of the oldest pending cases to be completed in chronological order. *See id*. To address the crisis level backlog, USCIS re-implemented LIFO in 2018, whereby the most recent applications are adjudicated first. *See* Ex. 1, ¶ 24; Ex. 2, ¶ 13. LIFO is an effective tool to discourage meritless filings to obtain EADs. Ex. 1, ¶ 30. Nationwide, courts have found LIFO is a rule of reason, satisfying the first *TRAC* factor. *Baizakova*, 2024 WL 3063227, at * 5 ("[T]he delay was the result of the LIFO rule, which was itself a reasoned response to a systemic crisis.") (quoting *Xu v. Cissna*, 434 F. Supp. 3d 43, 53 (S.D.N.Y. 2020)); *see, e.g.*, *Denisov v. Mayorkas*, 2024 WL 3522047, at *2, 5 (N.D. Cal. July 23, 2024); *Fang Yan*, 2023 WL 4053410, at *4; *Teymouri*, 2022 WL 18717560, at *4; *Wang*, 2024 WL 5707761, at *4. The first *TRAC* factor, therefore, favors Defendant.

2. <u>The Second *TRAC* factor (Congressional Timetable) favors Defendant.</u>

The second *TRAC* factor requires courts to look at whether Congress provided a timetable. 750 F.2d at 80. While 8 U.S.C. § 1158(d)(5)(A) contemplates timeframes for when interviews should take place and when a final adjudication should occur, Congress vested discretion in agencies to forego those timeframes *in exceptional circumstances*. 8 U.S.C. §§ 1158(d)(5)(A)(ii), (iii). The crisis-level backlog of asylum applications stemming from surges at the southern border and global migration beyond USCIS's control, and the ease of online filing, have created exceptional circumstances. *See* Section II.B *supra*; *Litovchenko*, 2025 WL 1914905, at *3 (finding the "crisis-level backlog of asylum application stemming from surges at the southern border and global migration beyond USCIS's control, and the ease of online filing" was an exceptional circumstance); *Zhang v. Wolf*, 2020 WL 5878255, at *5 (E.D.N.Y. Sept. 30, 2020)

("[T]he qualifying phrase 'absent exceptional circumstances' in § 1158(d)(5)(iii) suggests that Congress intended that the timeline not apply while USCIS is dealing with an exceptional level of asylum applicants."). "Absent a precise statutory timetable or other factors counseling expeditious action, an agency's control over the timetable . . . is entitled to considerable deference." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (cleaned up).

In its discretion, USCIS employs LIFO with a proven record of discouraging meritless asylum applications to keep overall receipts in check, ensuring agency resources are available where they are needed most, considering unprecedented demand for humanitarian protection. Ex. 1, ¶ 30. Yet Plaintiff here demands that the Court interfere with USCIS's broad, discretionary authority. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543-44 (1978) ("Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties. Indeed, our cases could hardly be more explicit in this regard." (cleaned up)). 8 U.S.C. § 1158(d)(7) expressly bars an individual from suing the United States for failure to meet the timeframes set forth in 8 U.S.C. § 1158(d)(5)(A) and Congress refused to include any consequence for the government's failure to comply with the timing provisions.

As explained *supra* in Section II.B, USCIS is facing unprecedented challenges that require the agency to prioritize and divert resources away from processing the backlog of affirmative asylum applications. USCIS's recent dedication of asylum officers and creation of a second track to work through the backlog demonstrates USCIS's reasoned commitment to administering the affirmative asylum program to the maximum extent practicable in its current operating environment and with extremely limited resources. *See* Interview Scheduling; 2023 Report at 9. Thus, the second *TRAC* factors favor Defendant.

3. The Third (Human Health and Welfare) and Fifth (Prejudice) *TRAC* factors favor Defendant.

The third and fifth *TRAC* factors overlap—the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay. *See Wang*, 2024 WL 5707761, at *4. "Welfare generally involves a significant risk of material impairment where there is current and actual danger to the health of the individual and the health of their progeny." *Liu v. Jaddou*, 2:24-cv-8212-JAK, 2025 WL 1911771, at *8 (C.D. Cal. Apr. 21, 2025) (quoting *Khushnood v. U.S. Citizenship & Immigr. Servs.*, 2022 WL 407152, at *4 (D.D.C. Feb. 10, 2022)).

While Plaintiff's asylum application is pending, Plaintiff may seek employment authorization among other benefits. 8 U.S.C. § 1158(d)(2); 8 C.F.R. § 274a.12(c)(8); *see* 8 U.S.C. § 1158(b)(3)(A); *see also Fang Yan*, 2023 WL 4053410, at *5 (finding the third and fifth *TRAC* factors favored the government when the applicant could live, travel, and work while the application was pending); *Yakhontova*, 2020 WL 4355299, at *4 (same). Further, Plaintiff may remain in the country while awaiting adjudication without fear of removal. 8 U.S.C. § 1158(c)(1)(A); *see Mehrnoosh E. v. USCIS*, No. 8:23-cv-1460-KK, 2024 WL 1136132, at *5 (C.D. Cal. Jan. 16, 2024) ("Plaintiff's health and welfare are arguably more at stake upon prompt adjudication as . . . at worst, the Application will be denied and Plaintiff will be required to return to Iran and risk the same persecution that led her to seek asylum in the first place."); *see also Zhu v. Cissna*, No. 2:18-cv-9698-PA, 2019 WL 3064458, at *4 (C.D. Cal. Apr. 22, 2019) (same).

Plaintiff does not establish how their circumstances significantly distinguish them from other similarly situated individuals also awaiting adjudication and experiencing the stress commonly attendant with such a delay. *See Baizakova*, 2024 WL 3063227, at *6; *Teymouri*, 2022 WL 18717560, at *4 ("[T]here are no implications of harm or prejudice to Plaintiff other than the passage of additional time."). Although Plaintiff may be frustrated with the alleged delay, Plaintiff has not established any specific harm to health or welfare or prejudice to their interests. *See Chen v. Radel*, No. 8:16-cv-1480-DOC,

2016 WL 11002594, at *4 (Nov. 21, 2016). Thus, the third and fifth *TRAC* factors favor Defendant.

4. <u>The Fourth *TRAC* factor (Effect of Expediting Relief) favors Defendant.</u>

"The fourth *TRAC* factor—the effect of granting relief on the agency's competing priorities—carries significant weight." *Baizakova*, 2024 WL 3063227, at *6 (citation omitted). The fourth factor weighs against a plaintiff when "a judicial order putting an applicant 'at the head of the queue simply moves all others back one space and produces no net gain.'" *Zhu*, 2019 WL 3064458, at *5 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)).

First, USCIS's decision-making here "involves a complicated balancing of a number of factors which are peculiarly within [an agency's] expertise." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)); *see Massachusetts v. EPA*, 549 U.S. 497, 527 (2007) ("[A]n agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities.")); *Liu*, 2025 WL 1911771, at *9 (noting that "USCIS decision-making involves a complex balancing of factors that are within its expertise"). USCIS is grappling with diverting asylum officers to handle an unprecedented surge of migrants and an influx of asylum applications while also operating under significant budgetary constraints. *Cf.* Annual Report 2020 at 43 (noting apprehensions of inadmissible noncitizens at the southern border rose from 444,859 in FY 2015 to 977,509 in FY 2019), *and* Pocan Letter at 1 (documenting over 450,000 affirmative asylum application in FY 2023), *with* USCIS 2023 Response at 2-3, 19-20 (explaining how USCIS did not receive the necessary funding to meaningfully decrease the backlog in FY 2023). Expediting review of Plaintiff's application over others would direct resources away from the adjudications that USCIS has identified as more urgent, requiring this Court to overrule the agency's prioritization decisions. *See Yilmaz v. Jaddou*, 697 F. Supp. 3d 951, 961 (C.D. Cal. 2023); *Barr Lab'ys*, 930 F.2d at 75 ("The agency is in a unique—

and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.”).

Second, Plaintiff does not establish why they should be processed ahead of other applicants. Indeed, lawsuits like Plaintiff's are one of the reasons USCIS is facing unprecedented circumstances. *See* Ex. 1, ¶ 41; *see also* OIG Report at 9-10 (explaining how the influx of lawsuits related to asylum applications forces USCIS to divert its resources away from the backlog). Courts in the Ninth Circuit have recognized that the effects of expending resources to adjudicate a plaintiff's asylum application out of order would prejudice all other asylum applications pending review and adjudication for as long, if not longer. *See, e.g.*, *Fang Yan*, 2023 WL 4053410, at *5 (“USCIS faces competing priorities, such as adjudicating the petitions that were filed before [plaintiff's] and those that require expedited review due to exigent circumstances.”); *Yilmaz*, 697 F. Supp. 3d at 962 (“[O]ne group of applicants would be sufficiently resourced or legally savvy to petition the Court to demand USCIS to adjudicate their application outside of the LIFO system. As USCIS works through its ‘regular’ applications, these well-resourced or legally savvy plaintiffs would be continuously interrupting USCIS' work with court orders to put them at the front of the line.”); *Yakhontova*, 2020 WL 4355299, at *4; *Varol*, 420 F. Supp. 3d at 1098; *Zhang v. Cissna*, No. 2:18-9696-MWF, 2019 WL 3241187, at *5 (C.D. Cal. Apr. 25, 2019) (“[T]he effect of expediting adjudication of Plaintiff's Application would be an improper intrusion on USCIS' activities of higher or competing priorities.”). Plaintiff has not identified a basis for the Court to find in Plaintiff's favor on the fourth *TRAC* factor; therefore, this factor favors Defendant.

5. <u>The Sixth *TRAC* factor (Impropriety) favors Defendant.</u>

The sixth *TRAC* factor provides that “the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.” F.2d at 80 (cleaned up). Plaintiff has not alleged any facts to permit the Court to find that the sixth *TRAC* factor weighs in Plaintiff's favor. *See Assad*, 2024 WL 4580385, at *6 (“Where there is no evidence of bad faith, the sixth factor is

'irrelevant.'") (quoting *Vaz*, 33 F. 4th at 1138, n.6)). USCIS has created a second track for scheduling asylum interviews designed to ameliorate the backlog. *See* Interview Scheduling. Any delay is not the result of agency impropriety. *See Fang Yan*, 2023 WL 4053410, at *5; *Immigr. & Naturalization Servs. v. Miranda*, 459 U.S. 14, 18 (1982) ("The only indication of negligence is the length of time that the INS took to process respondent's application. Although the time was indeed long, we cannot say in the absence of evidence to the contrary that the delay was unwarranted.").

In sum, because the *TRAC* factors weigh heavily in Defendant's favor, Plaintiff's allegations are insufficient to state a plausible claim for unreasonable delay and the Complaint should be dismissed.

**B. Plaintiff Fails To State A Mandamus Claim For The Same Reasons.**

To the extent that Plaintiff attempts to state a mandamus claim under 28 U.S.C. § 1361, it should be dismissed for the same reasons. Although the APA and the Mandamus Act are distinct laws, when agency delay is alleged "the Supreme Court has construed a claim seeking mandamus . . . as one for relief under § 706 of the APA." *Indep. Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). Where, as here, a plaintiff seeks identical relief under the APA and the Mandamus Act, courts routinely elect to analyze both claims under the APA only." *Shahijani v. Laitinen*, 2023 WL 6889774, at *2 (C.D. Cal. Oct. 6, 2023) (citing *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022); *Castaneda v. Garland*, 562 F. Supp. 3d 545, 561 (C.D. Cal. 2021)).

**C. Plaintiff Fails To State A Due Process Claim.**

To state a due process claim, a plaintiff must identify "(1) the deprivation of a constitutionally protected liberty or property interest, and (2) the 'denial of adequate procedural protections.'" *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018) (citation omitted).

Plaintiff failed to name a protected liberty or property interest, and instead makes a generic claim to due process and equal protection. Dkt. 1 ¶ 39. First, Defendant has not been deprived of the adjudication of her asylum application. Her asylum application was

accepted and queued for adjudication per USCIS's rule of reason for application scheduling, as detailed above. *See* Ex. 2, ¶¶ 20-21.

Second, Plaintiff does not have a protected right to adjudication of her application within a given timeframe. Section 1158(d)(5)(A)(ii) states that "the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed." However, Section 1158(d)(7) makes clear that "[n]othing in this subsection shall be construed to create any substantial or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers...." 8 U.S.C. § 1158(d)(7). Furthermore, delay alone does not constitute a due process violation. *See Kouropova v. Gonzales*, 200 F. App'x 692, 694 (9th Cir. 2006) ("[W]e typically require additional irregularities in the administrative process beyond the delay alone."). Moreover, courts have found delays longer than Plaintiff's in the immigration context did not constitute a deprivation of due process rights. *Vang v. Gonzales*, 237 F. App'x 24, 31 (6th Cir. 2007) (finding a fourteen-year delay in adjudicating the plaintiff's asylum application did not violate due process); *Arostegui v. Holder*, 368 F. App'x 169, 172 (2d Cir. 2010) (finding that a five-year delay in initiating removal proceedings did not violate the petitioner's due process rights); *Mudric v. AG of the United States*, 469 F.3d 94, 99 (3d Cir. 2006) (finding no due process violation for a four-year delay in processing an asylum application because "federal immigration laws do not vest in aliens a constitutional right to have their immigration matters adjudicated in the most expeditious manner possible").

Because Plaintiff has failed to allege a deprivation of a protected right, her due process claim should be dismissed. *See*, *e.g.*, *Yilmaz v. Jaddou*, 697 F. Supp. 3d 951, 961 (C.D. Cal. 2023) (dismissing with prejudice asylum delay action, including Due Process claim).

## VI. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant this motion for summary judgment and dismiss this action.

Dated: November 17, 2025

Respectfully submitted,

BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

*/s/ Paul (Bart) Green**
PAUL (BART) GREEN
Assistant United States Attorney

Attorneys for Defendants

Certificate of Compliance under L.R. 11-6.2

*Counsel of record for Defendants, certifies that this brief contains 5,291 words, which complies with the word limit of L.R. 11-6.1.

**L.R. 7-3 COMPLIANCE STATEMENT**

I, Paul (Bart) Green, declare and state as follows:

1. I am an Assistant United States Attorney and am counsel for the defendants in this action. I submit this declaration in compliance with Local Rule 7-3. I make the following statements based on my personal knowledge. If called as a witness, I could and would competently testify thereto.

2. On October 23, 2025, I met and conferred telephonically with Plaintiff's counsel, Mohamed W. Karawia, regarding Defendants' anticipated motion for summary judgment and any potential resolution of the need for motion practice. The call lasted approximately 10-15 minutes. During the telephone conference, I discussed the anticipated arguments in the motion. The parties were unable to reach a resolution that eliminates the necessity of Defendants' motion

3. Prior to filing the motion, I shared with Mr. Karawia copies of the Declarations of Brett H. Lassen and David Radel.

4. On November 5, 2025, at the parties' request, the Court entered an order granting the parties stipulation to modify the briefing schedule and to vacate pretrial deadlines. Dkt. 17. The Court set a hearing on this motion for February 13, 2026.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 17, 2025, at Los Angeles, California.

/s/ *Paul (Bart) Green*
PAUL (BART) GREEN
Assistant United States Attorney