UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-00938-SSS-ACCVx | Date | June 12, 2026 |
| Title | *Ka Li Cheung v. Kristi Noem et al.* | | |

Present: The Honorable SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Irene Vazquez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 20]**

Before the Court is Defendants Kristi Noem and Joseph Edlow's Motion for Summary Judgment. [Dkt. No. 20, "Motion" or "MSJ"]. The Motion is fully briefed and ripe for review. [Dkt. No. 22, "Opposition" or "Opp."; Dkt. No. 23, "Reply"]. Having considered the parties' arguments, relevant legal authority, and record in this case, the Court **GRANTS** Defendants' Motion for Summary Judgment. [Dkt. No. 20].

## I. BACKGROUND

Plaintiff is a native and citizen of the People's Republic of China who filed a Form I-589, Application for Asylum and for Withholding of Removal, with the United States Citizenship and Immigration Services ("USCIS") Los Angeles Asylum Office on or about February 1, 2021. [Dkt. No. 1, Complaint or "Compl." ¶¶ 2, 8, 19; Dkt. No. 21-1, Statement of Uncontroverted Facts or "SUF" 1]. As of the filing of the Motion, USCIS had neither scheduled an interview nor adjudicated the application, and the application had been pending for more than four years and nine months. [Motion at 9; Opp. at 8].

USCIS schedules affirmative asylum interviews under a "Last-In, First-Out" ("LIFO") method announced in January 2018, under which it interviews, in order of priority: (a) applications requiring rescheduling; (b) applications pending twenty-one days or fewer; and (c) all other pending applications, beginning with newer filings and working back toward older ones. [SUF 2–3; Dkt. No. 20-1, "Lassen Decl." ¶¶ 24–25; Dkt. No. 20-2 "Radel Decl." ¶ 13].

Plaintiff's application falls within the third LIFO priority, "all other pending affirmative asylum applications, starting with newer filings and working back towards older filings." [SUF No. 4; Radel Decl. ¶ 21]. As of October 6, 2025, the Los Angeles Asylum Office had more than 119,000 applications in its affirmative asylum backlog. [SUF No. 5; Radel Decl. ¶ 7]. While her application remains pending, Plaintiff holds an Employment Authorization Document valid through April 16, 2029, that she may renew in five-year increments, she may seek advance parole to travel, and she faces no risk of removal. [SUF No. 7; Radel Decl. ¶¶ 23–24]. The Los Angeles Asylum Office has not received an expedite request from Plaintiff. [Radel Decl. ¶ 22].

Plaintiff initiated this action on April 16, 2025, asserting claims for unreasonable delay under the Administrative Procedure Act ("APA"); mandamus under 28 U.S.C. § 1361; and violation of the Due Process and Equal Protection Clauses of the Fifth Amendment. [Compl. ¶¶ 26–40].

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if the dispute over that fact may affect the outcome of the lawsuit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court need not consider irrelevant and unnecessary factual disputes. *Id.* A dispute is genuine if a reasonable jury could return a verdict for the non-moving party based on the evidence. *Id.* The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To do so, the moving party must present evidence that either negates an essential element of the non-movant's case or demonstrates the non-movant does not have evidence sufficient to support its case. *Id*. If the movant has met its burden, the non-movant must set forth specific facts showing there is a genuine issue for a trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986). The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014).

## III. DISCUSSION

### A. Plaintiff's Burden on Summary Judgment as Non-Movant

As a threshold matter, Plaintiff's Opposition does not engage the applicable summary judgment standard. Plaintiff submitted no declaration and no evidence in Opposition to the Motion. She also filed no response to Defendants' Statement of Uncontroverted Facts, and the Court thus treats Defendants' supported facts as established for purposes of this Motion. *See* L.R. 56-2; Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .").

Moreover, throughout her Opposition, Plaintiff frames the question as whether she has "plausibly alleged" unreasonable delay and contends that "the Court's task is to test Plaintiff's allegations against the plausibility standard." [Opp. at 6]. That is the standard governing a motion to dismiss under Rule 12(b)(6), not summary judgment. At this stage, Plaintiff was required to come forward with admissible evidence, and she did not. *Matsushita*, 475 U.S. at 587 ("In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" (quoting Fed. R. Civ. P. 56(e))).

The Court notes that it previously denied a motion to dismiss on the *TRAC* factors in a comparable asylum-delay action. *See Liang v. Radel*, No. 5:24-cv-01319-SSS, 2024 WL 5466658 (C.D. Cal. Dec. 19, 2024) (finding that resolution of the *TRAC* factors at the motion to dismiss stage is premature). Defendants, mindful of that ruling, declined to move under Rule 12(b)(6) and instead developed an evidentiary record under Rule 56. [Motion at 7].

Nevertheless, the Court addresses the merits, because the material facts bearing on unreasonable delay, principally the length of the delay and the reasons for it, are undisputed and present a question of law.

### B. APA Unreasonable-Delay Claim

The APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). To assess whether delay is unreasonable, the Ninth Circuit applies the six factors articulated in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"). *See Vaz v. Neal*, 33 F.4th 1131, 1137 (9th Cir. 2022).

The *TRAC* factors include the following:

1. The time agencies take to make decisions must be governed by a rule of reason;
2. where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
3. delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
4. the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
5. the court should also take into account the nature and extent of the interests prejudiced by the delay; and
6. the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (citations omitted). On this record, the factors favor Defendants.

#### 1. *TRAC* Factor 1

The first factor, the "most important," though not dispositive, asks whether the agency's pace is governed by an identifiable rationale. *A Cmty. Voice v. EPA*, 878 F.3d 779, 786 (9th Cir. 2017); *Baizakova v. Jaddou*, No. SA CV 24-201-JFW-DFMx, 2024 WL 3063227, at *5 (C.D. Cal. June 14, 2024). Courts in this District and elsewhere have consistently held that LIFO is a rule of reason because it has an identifiable rationale: reducing the incentive to file non-meritorious applications to obtain employment authorization. [*See* Lassen Decl. ¶ 30]. *Teymouri v. USCIS*, No. 22-cv-7689-PA-JCx, 2022 WL 18717560, at *4 (C.D. Cal. Jan. 31, 2022)

(collecting cases); *see also Yan v. Dir. of L.A. Asylum Off.*, No. 2:22-cv-05846-ODW-MRWx, 2023 WL 4053410, at *4 (C.D. Cal. June 16, 2023). USCIS's addition of a second track to the LIFO policy addressing the oldest pending cases reinforces, rather than undermines, that rationale. [*See* Radel Decl. ¶ 15].

Plaintiff's argument that LIFO is unreasonable because it leaves the longest-waiting applicants in indefinite limbo addresses the policy's efficacy, not its rationale, and the rule-of-reason inquiry turns on the latter. *See Celebi v. Mayorkas*, 744 F. Supp. 3d 100, 106 (D. Mass. 2024) ("The Court's determination that LIFO is a rule of reason is, however, based on the policy's rationale, not on its efficacy."); *Su v. Mayorkas*, 698 F. Supp. 3d 1168, 1177 (N.D. Cal. 2023) (finding that the LIFO policy can still be operating by a "rule of reason" even if it were true that LIFO "disadvantages legitimate asylum applications filed years ago that are in need of adjudication").

Additionally, Plaintiff's delay of more than four years and nine months is within the range courts have repeatedly found reasonable. *See, e.g.*, *Teymouri*, 2022 WL 18717560, at *4 (five years); *Kazantceva v. Jaddou*, No. 8:24-cv-00827-FLA-KESx, 2025 WL 1537647, at *3 (C.D. Cal. May 28, 2025) (four-and-a-half years). This factor thus favors Defendants.

### 2. *TRAC* Factor 2

Although the Immigration and Nationality Act (INA), under 8 U.S.C. § 1158(d)(5)(A), contemplates a 45-day interview timeframe and 180-day adjudication timeframe, Congress qualified both with an "exceptional circumstances" exception. *Yan*, 2023 WL 4053410, at *4. Courts have found that such "timing requirements are not mandatory" and "do[] not outweigh the rule of reason which supports the USCIS policies which have caused the challenged delays." *Varol v. Radel*, 420 F. Supp. 3d 1089, 1097 (S.D. Cal. 2019).

The record supports a showing of exceptional circumstances: a crisis-level backlog exceeding one million affirmative applications nationwide, driven by border surges, shifting global migration, and the volume of online filings. [Lassen Decl. ¶¶ 27–37]. *See Zhang v. Wolf*, No. 19-cv-5370-DLI, 2020 WL 5878255, at *5 (E.D.N.Y. Sept. 30, 2020); *Su*, 698 F. Supp. 3d at 1173. This factor thus favors Defendants.

### 3. *TRAC* Factors 3 and 5

These overlapping factors ask whether human health and welfare are at stake and the nature of the interests prejudiced by delay. *Nosraty v. Oudkirk*, No. 2:23-cv-04632-MCS-PD, 2024 WL 654556, at *3 (C.D. Cal. Jan. 2, 2024). "Welfare generally involves a significant risk of material impairment where there is current and actual danger to the health of the individual and the health of their progeny." *Khushnood v. U.S. Citizenship & Immigr. Servs.*, No. 21-2166-FYP, 2022 WL 407152, at *4 (D.D.C. Feb. 10, 2022).

Plaintiff remains lawfully present, is authorized to work through 2029, may apply for advance parole, and faces no removal while her application is pending. [SUF 7; Radel Decl. ¶¶ 23–24]. Plaintiff submitted no evidence of individualized harm. General allegations of stress and concern common to all asylum applicants do not distinguish her from others similarly situated and does not establish prejudice to health or welfare beyond the strain inherent in the application process itself. *See Chen v. Radel*, No. SACV 16-1480-DOC-DFMx, 2016 WL 11002594, at *4 (C.D. Cal. Nov. 21, 2016); *see also Baizakova*, 2024 WL 3063227, at *6. This factor thus favors Defendants.

### 4. *TRAC* Factor 4

This factor, the effect of granting relief on the agency's competing priorities, carries "significant weight." *Baizakova*, 2024 WL 3063227, at *6. The fourth factor weighs against a plaintiff when "a judicial order putting an applicant 'at the head of the queue simply moves all others back one space and produces no net gain.'" *Zhu v. Cissna*, No. 18-cv-9698-PA-JPRx, 2019 WL 3064458, at *5 (C.D. Cal. Apr. 22, 2019) (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)).

Here, as discussed, the delay Plaintiff has experienced is common. In addition, as other courts have recognized in similar circumstances, advancing Plaintiff's Asylum Application would not serve a higher or competing priority, but would merely delay adjudication of other asylum applicants who have been waiting for as long, if not longer, than Plaintiff. *See, e.g.*, *Varol*, 420 F. Supp. 3d at 1098 ("Here, granting relief to Plaintiff simply moves her to the front of the line at the expense of all other applicants who may not have filed an application for mandamus relief."); *Yan*, 2023 WL 4053410, at *5 ("USCIS faces competing priorities, such as adjudicating the petitions that were filed before [the plaintiff's] and those that require expedited review due to exigent circumstances."); *Zhang v.*

*Cissna*, No. 18-cv-9696-MWF-JCx, 2019 WL 3241187, at *5 (C.D. Cal. Apr. 25, 2019) ("[T]he effect of expediting adjudication of Plaintiff's Application would be an improper intrusion on USCIS' activities of higher or competing priorities."). This factor thus favors Defendants.

#### 5. ***TRAC* Factor 6**

The Court "need not find any impropriety lurking behind agency lassitude" to find unreasonable delay, *TRAC*, 750 F.2d at 80, but Plaintiff alleges none and concedes the point. [Opp. at 11 ("Here, Plaintiff does not allege, or is there any indication of, bad faith on the part of USCIS. Therefore, this factor can be ignored.")]. This factor is thus neutral.

Weighing the factors together, the undisputed record establishes that the delay in adjudicating Plaintiff's application is not unreasonable as a matter of law. Defendants are entitled to summary judgment on the APA claim.

### C. Mandamus Claim

Where a plaintiff seeks the same relief under the Mandamus Act and the APA, the claims are analyzed together under the APA. *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997); *Vaz*, 33 F.4th at 1135. If Plaintiff's "APA claim fails, [her] claim under the Mandamus Act fails as well." *Infracost Inc. v. Blinken*, 732 F. Supp. 3d 1240, 1251–52 (C.D. Cal. 2024) (citing *Vaz*, 33 F.4th at 1138–39). As discussed above, because Plaintiff cannot establish unreasonable delay under the APA, her mandamus claim also fails.

### D. Due Process Claim

To state a due process claim, a plaintiff must identify the deprivation of a constitutionally protected liberty or property interest and the denial of adequate procedural protections. *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018). Plaintiff identifies no protected interest in adjudication of her application within any particular timeframe. Delay alone in an administrative context, without additional irregularities, does not amount to a due process violation. *See Kouropova v. Gonzales*, 200 F. App'x 692, 694 (9th Cir. 2006) ("[W]e typically require additional irregularities in the administrative process beyond the delay alone."); *Vang v. Gonzales*, 237 F. App'x 24, 31 (6th Cir. 2007); *Mudric v. Att'y Gen.*, 469 F.3d 94, 99 (3d Cir. 2006). Plaintiff also did not separately brief or support this claim in Opposition. This claim thus fails.

## IV. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. [Dkt. No. 20]. A separate judgment will be issued.

**IT IS SO ORDERED.**